**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF LOUISIANA**

**MONROE DIVISION**

| | |
|---|---|
| **FRANCISCA MIRANDA SERRANO** | **CIVIL ACTION NO. 3:26-2395** |
| | **SECTION P** |
| **VS.** | |
| | **JUDGE ALEXANDER C. VAN HOOK** |
| **LISA BOWEN, ET AL.** | **MAG. JUDGE KAYLA D. MCCLUSKY** |

**REPORT AND RECOMMENDATION**

Petitioner Francisca Miranda Serrano, a detainee in the custody of the Department of Homeland Security ("DHS") and the Bureau of Immigration and Customs Enforcement ("ICE"), petitions the Court for a writ of habeas corpus under 28 U.S.C. § 2241.[1] Respondents oppose the petition. [doc. # 9]. For reasons below, the Court should grant habeas corpus.

**Background**

Petitioner is a citizen of Mexico. "Petitioner entered the country on June 1, 1993 without proper immigration documents and without inspection or parole." [doc. # 9, p. 1].

"Francisca Miranda Serrano is a mother and grandmother who has resided in the United States since the early 1980s. . . . Already prior to her detention, Ms. Miranda was suffering from a growing array of health problems and signs of cognitive decline that alarmed her family. Now, isolated and in detention, she forgets simple things; cannot recall her lawyer's name in their

[1] This matter has been referred to the undersigned for review, report, and recommendation under 28 U.S.C. § 636, and the standing orders of the Court.

weekly calls; and struggles to call her children because she cannot remember their phone numbers or keep track of when they last spoke." [doc. # 1, pp. 1-2].

"Ms. Miranda suffers from numerous serious medical conditions, including diabetes, hypertension, anemia, chronic memory loss, cognitive decline, and an intracranial meningioma (brain tumor) requiring ongoing monitoring and medical care. Family members observed that, over several years, particularly since 2025, her memory and cognitive functioning noticeably deteriorated. Even prior to her detention, they reported that she frequently forgot conversations, repeated questions multiple times, misplaced important documents and personal items, became confused about dates and appointments, and increasingly relied on family members to assist her with daily tasks and medical care. She had met with her primary care doctor about these concerns, and her family was working to get her additional treatment." [doc. # 1, p. 6]. "Isolated and alone, Ms. Miranda has difficulty calling her family because she forgets their phone numbers and cannot remember whether she has called them or when. She forgets dates and times when speaking to family members. She takes multiple types of medication, but she does now know what they are. The food at the center is not appropriate for her dietary needs and diabetes. To her knowledge, she has not received any treatment for the tumor in her brain." *Id.* at 10.

"Ms. Miranda and her husband, Andres Valerio, have been married since 1973 and have six children together. Their family includes United States citizens, lawful permanent residents, and numerous grandchildren. Ms. Miranda has lived with and relied upon her family in Queens, New York, for support for decades. Ms. Miranda has no criminal history in the United States or any other country and has lived a peaceful life devoted to her family and community." [doc. # 1, p. 5].

"In approximately 1995, Ms. Miranda was detained during a workplace immigration enforcement action and placed in deportation proceedings. She was scheduled to attend a deportation hearing on March 8, 1996 at the Immigration Court in New York City. On March 8, 1996, while eight months pregnant, Ms. Miranda appeared at 26 Federal Plaza in Manhattan for her hearing. She arrived at the courthouse but waited in multiple lines as she attempted to navigate to the proper entrance and floor, causing delays in her arrival to the correct area of the building. By the time she made it, she was informed that her case had already been called and that an order had been entered against her. Ms. Miranda was not permitted to enter the courtroom or explain the circumstances of her delayed arrival to the Immigration Judge. The Immigration Judge entered an in absentia deportation order against her on the same date, March 8, 1996. Ms. Miranda gave birth to her U.S.-citizen son, Armando Valerio, on March 14, 1996—just six days after the hearing date." [doc. # 1, pp. 5-6].

On October 20, 2025, ICE re-detained Petitioner. [doc. # 1, p. 6].

"On October 25, 2025, Ms. Miranda, with the help of a non-profit organization, filed a motion to reopen her immigration proceedings. On November 7, 2025, Ms. Miranda filed a supplemental brief in support of that motion that included an application for Suspension of Deportation, a form of relief available to her based on the date her deportation proceedings commenced." [doc. # 1, p. 8]. "The Immigration Judge ultimately denied the Motion to Reopen on February 27, 2026." [doc. #s 1, p. 9; 9-2, p. 2].

"Ms. Miranda appealed the denial by filing a timely Notice of Appeal on March 11, 2026 to the Board of Appeals. The appeal remains pending." [doc. # 1, p. 9]. The Board of Immigration Appeals ("BIA") granted Petitioner's motion to stay her removal. [doc. # 9, p. 2]. Petitioner highlights, however, that her "motion to reopen alleging lack of notice or exceptional

circumstances for a failure to appear automatically stay[ed] her deportation until its full adjudication by the agency." [doc. # 1, p. 9].

Petitioner filed this proceeding on July 8, 2026. She first claims: "Although [she] has now been detained over eight months, ICE has not conducted any mandatory Post-Order Custody Reviews as required by regulation. *See* 8 C.F.R. § 241.4(a), (d), (h)(1), (k)(2) (setting forth requirements of post-order custody review process). Neither she nor her counsel received notice of a 90-day or 180-day custody review, nor did they receive an opportunity to submit evidence in support of release or a written custody determination. To their knowledge, Ms. Miranda has not had an interview. Neither she nor her counsel have received any notification of a custody decision, written or otherwise." [doc. # 1, pp. 10, 16].

Next, Petitioner claims that the Government is violating her right to procedural due process. [doc. # 1, p. 22].

Petitioner next claims that the Government is violating her right to substantive due process. [doc. # 1, p. 24]. She argues that because her "removal is not reasonably foreseeable, her detention is not related to any legitimate government interests . . . ." *Id.* at 25.

Finally, Petitioner claims that "[o]fficers violated [her] Fourth Amendment rights by seizing her within the curtilage of her home without probable cause or a warrant to enter that area." [doc. # 1, p. 25].

Respondents opposed the petition on August 13, 2026. [doc. # 9]. Petitioner replied on August 27, 2026. [doc. # 10].

## **Law and Analysis**

Under 8 U.S.C. § 1231(a)(1)(A), "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section

referred to as the 'removal period')." Under Section 1231(a)(6), "An alien ordered removed who is inadmissible[,] . . . removable[,] . . . or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3)." In *Zadvydas*, 533 U.S. at 682, the Supreme Court construed Section 1231(a)(6) "to contain an implicit 'reasonable time' limitation, the application of which is subject to federal-court review."

"[T]he Court construed § 1231(a)(6) to mean that an alien who has been ordered removed may not be detained beyond 'a period reasonably necessary to secure removal,' 533 U.S., at 699, 121 S.Ct. 2491 and it further held that six months is a presumptively reasonable period, *id.,* at 701, 121 S.Ct. 2491. After that, the Court concluded, if the alien 'provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future,' the Government must either rebut that showing [with evidence] or release the alien." *Jennings v. Rodriguez*, 138 S. Ct. 830, 843 (2018) (quoting *Zadvydas*, 533 U.S. at 699).[2] If removal is not reasonably foreseeable, "the alien's release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances, and the alien may no doubt be returned to custody upon a violation of those conditions." *Id.* at 700.

"[R]eview must take appropriate account of the greater immigration-related expertise of the Executive Branch, of the serious administrative needs and concerns inherent in the necessarily extensive INS efforts to enforce this complex statute, and the Nation's need to 'speak with one voice' in immigration matters." *Id.* at 700.

---

[2] "The alien bears the initial burden of proof in showing that no such likelihood of removal exists." *Andrade v. Gonzales*, 459 F.3d 538, 543 (5th Cir. 2006).

Here, Petitioner has been in custody beyond the presumptively reasonable six-month period. To date, she has been detained at least 317 days (or 10 months, 13 days) following her final order of removal.

In addition, Petitioner meets her initial burden of providing good reason to believe that there is no significant likelihood of her removal in the reasonably foreseeable future. For over 10 months, the Government has been unable to remove her. She also suggests that the Government has not been diligent in effecting her removal, arguing that she "has been afforded absolutely no process, let alone constitutionally sufficient process, prior to or since this deprivation, making the value of additional process high." [doc. # 1, p. 22]. Moreover, she highlights that her removal is stayed and that, consequently, her removal is not significantly likely to occur in the reasonably foreseeable future.

Respondents fail to rebut Petitioner's arguments. They do not provide any evidence indicating that, for instance, travel documents are forthcoming or that ICE has made meaningful progress in effectuating Petitioner's removal.

Respondents attach the declaration of Supervisory Detention and Deportation Officer for Enforcement and Removal Operations Richard Polanco, who declares in part:

> 5. On March 8, 1996, Petitioner failed to appear for a hearing and the Immigration Judge ordered Petitioner removed to Mexico in abstentia. Petitioner did not file an appeal, making the order a final order of removal.
>
> 6. On October 20, 2025, ERO Fugitive Operations encountered Petitioner at her home in Flushing, New York. Upon talking to Petitioner, it was determined she was present in the United States without status and had a final removal order to Mexico. ERO issued a Form I-200, Warrant of Arrest, and detained Petitioner. Upon her arrest, Petitioner was taken to the Federal Plaza in New York for processing. At the Federal Plaza, she was issued a Form I-205 (Warrant of Removal/Deportation) and Form I-229A (Warning for Failure to Depart).
>
> 7. On October 21, 2025, Petitioner was transferred to Richwood Correctional Center in Monroe, Louisiana, where she remains now.

> 8. On October 25, 2025, Petitioner filed a Motion to Reopen with the Immigration Court based on the in abstentia removal order. Upon the filing of this motion, an automatic stay of removal was issued until the completion of the proceeding.
>
> 9. On November 7, 2025, the Motion to Reopen was still pending with the Immigration Court.
>
> 10. On December 29, 2025, a Notice of 90-day Post-Order Custody Review was served to Petitioner.
>
> 11. On January 10, 2026, a 90-day Post-Order Custody Review packet with a recommendation was sent by the Supervisory Detention and Deportation Officer (SDDO) to the Field Office Director (FOD) for review.
>
> 12. On January 12, 2026, the FOD issued the Custody Review Decision to continue detention.
>
> 13. On January 14, 2026, a 90-day Post-Order Custody Review Letter to Continue Detention was sent out for service on Petitioner.
>
> 14. On February 26, 2026, the Motion to Reopen was still pending with the Immigration Court.
>
> 15. On February 27, 2026, the Immigration Court denied Petitioner's Motion to Reopen her proceedings. At this time the stay of removal was lifted.
>
> 16. On March 11, 2026, Petitioner filed a Notice of Appeal with the Board of Immigration (BIA), along with a Motion for Stay of Deportation.
>
> 17. On March 12, 2026, the BIA granted the Stay of Deportation pending the results of the appeal.
>
> 18. Also on March 12, 2026, ERO removed Petitioner's name from a manifest for a removal flight that was scheduled for March 14, 2026, due to the granted Stay of Deportation.
>
> 19. On April 4, 2026, the appeal is still pending with the BIA, and the Stay of Deportation is still in effect.
>
> 20. As of August 7, 2026, the appeal is still pending with the BIA. The BIA has yet to issue a briefing schedule.

[doc. # 9-1].

That the Government scheduled a flight for Petitioner before or after the stay of her removal does not establish that removal is *significantly likely* to occur in the reasonably foreseeable future. Respondents cannot even begin the removal process (anew) because Petitioner's removal is stayed. And Respondents do not state approximately when the BIA will rule on Petitioner's appeal, when the BIA will lift the stay, or when the Government might remove Petitioner following the BIA's ruling (even assuming the BIA rules against Petitioner).[3] Yet, the Government still detains her.[4]

Respondents contend: "Here, there is a legal impediment to removal—Petitioner's motion to stay removal was granted. While Petitioner was within her rights to seek that relief, a consequence is that she remains in detention. Petitioner was scheduled for removal to Mexico and would have been removed, the day before her husband's removal, but for her motion. ICE must comply with that order." [doc. # 9, p. 3].

Respondents liken Petitioner's motion to reopen and appeal to the BIA to other petitioners who attempt to intentionally impede or thwart removal. *Id.* at 3. However, nothing in the record indicates or suggests that Petitioner moved to reopen her immigration proceedings or appealed to the BIA to intentionally or in bad faith impede or thwart removal. As Respondents point out, "Petitioner was within her rights to seek that relief . . . ." And in fact, the Government has elected to stay Petitioner's removal. Other courts when faced with this scenario, like the undersigned have concluded that the petitioner is entitled to the habeas relief sought. *See Vu v.*

---

[3] The BIA could take many months or even years to rule. *See, e.g., Souleymane v. Olsen*, No. 1:26-CV-00425-TWP-TAB, 2026 WL 785596, at *1 (S.D. Ind. Mar. 20, 2026) (writing in March 2026 that the petitioner's "most recent motion to reopen has been pending *since 2021*.").

[4] Notably, the Government failed to remove Petitioner for over thirty years following her final order of removal.

*Blanche*, No. 3:26-CV-1416, 2026 WL 1696541, at *3 (M.D. Pa. June 11, 2026) (granting a petitioner's *Zadvydas* claim because removal was stayed and, "[w]hile the stay remains in place Petitioner cannot be removed, even though ICE possesses Petitioner's Vietnamese travel documents."); *Souleymane v. Olsen*, 2026 WL 785596, at *1 (S.D. Ind. Mar. 30, 2026) (granting habeas relief to petitioner with final order of removal where, as here, the BIA "has chosen to stay his removal while it considers whether to reopen his removal proceedings"); *Ramirez v. Bondi*, No. 25-CV-1002-RMR, 2025 WL 1294919, at *6 (D. Colo. May 5, 2025) ("[T]here is no indication that Petitioner engaged in improper dilatory tactics, and Courts have not held this factor against petitioners who have engaged in good faith efforts to obtain counsel and seek relief through all legal channels available against them, as Petitioner has done here.") (citing cases)).

Respondents provide no evidence—or reasons to conclude—that a travel document is forthcoming.[5] Respondents cannot rest on bald assertions that removal is foreseeable without

[5] *See Gabremicheal v. Gonzales*, 2007 WL 624602, at *3 (W.D. La. Jan. 31, 2007) ("There is simply no indication that any effort is being made to obtain a travel document for Gabremicheal or that a travel document is likely to issue in the reasonably foreseeable future."); *Azad v. Interim Dist. Director, New York,* 2009 WL 2569132 (S.D.N.Y., August 19, 2009) (finding that ICE failed to rebut a showing by petitioner where ICE's contacts with the local Consulate of Bangladesh resulted only in statements that the consulate was awaiting confirmation of information); *Mohamed v. Ashcroft,* 2002 WL 32620339 (W.D. Wash., April 15, 2002) (granting petitioner habeas corpus relief where the government failed to offer any "specific information regarding how or when [it] expect[ed] to obtain the necessary documentation or cooperation from the Ethiopian government."); *Islam v. Kane*, 2011 WL 4374226, at *1 (D. Ariz. Aug. 30, 2011), *report and recommendation adopted,* 2011 WL 4374205 (D. Ariz. Sept. 20, 2011) ("Other than stating that the travel document request is 'pending,' Respondent provides no details about the status of Petitioner's travel document, such as whether DHS has received any assurances that travel documents are forthcoming, or whether the Bangladesh Consulate is even willing to issue a travel document for Petitioner."); *Shefqet v. Ashcroft*, 2003 WL 1964290, at *5 (N.D. Ill. Apr. 28, 2003) (finding that the government failed to meet its burden in part because there was no evidence that Guyana had responded to the request for travel documents); *Butt v. Holder*, 2009 WL 1035354, at *5 (S.D. Ala. March 19, 2009) (holding that the petitioner met his initial burden when he was held in ICE custody for more than ten months after the issuance of his removal order with no indication from the Pakistani Embassy that travel documents would be issued); *Palma v. Gillis,* 2020 WL 4880158, at *2 (S.D. Miss. July 7, 2020).

providing sufficient supporting evidence. "A theoretical possibility of eventually being removed does not satisfy the Government's burden once the removal period has expired and the petitioner establishes good reason to believe [that] his removal is not significantly likely in the reasonably foreseeable future." *Kane v. Mukasey*, 2008 WL 1139137 at *5 (S.D. Tex. 2008).

As one Court stated, "if [ICE] has no idea of when it might reasonably expect [Petitioner] to be repatriated, this Court certainly cannot conclude that his removal is likely to occur—or even that it might occur—in the reasonably foreseeable future." *Singh v. Whitaker*, 362 F. Supp. 3d 93, 102 (W.D.N.Y. 2019). Petitioner need not show that removal is impossible. *Zadvydas*, 533 U.S. at 702. Although there may be some possibility that Petitioner could be removed, an unsubstantiated possibility does not satisfy Respondents' burden.

Accordingly, Petitioner's detention is unreasonable; the Court should grant habeas corpus.[6]

## Conclusion

For the reasons above, **IT IS RECOMMENDED** that Petitioner Francisca Miranda Serrano's petition for habeas corpus be **GRANTED**: Respondents, and the Warden of Richwood Correctional Center, shall (A) immediately release Petitioner from custody without bond, under reasonable conditions of supervision if necessary and (B) notify Petitioner's counsel of the exact location and time of her release no less than two hours before her release.

**IT IS FURTHER RECOMMENDED** that Respondents shall, within **24 hours** after Petitioner's release, file a status report confirming her release.

[6] The undersigned finds no need to address any claim or request for relief not addressed herein.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, this 2nd day of September, 2026.

Kayla D. McClusky
United States Magistrate Judge